# REPORTS

OF

## CASES ARGUED AND DETERMINED

AT THE

## JUNE TERM, 1846,

### HORSEFIELD v. ADAMS AND KNAPP.

1. If one is unlawfully ejected by means of a writ of restitution, in a suit to which he is neither a party or privy, this furnishes no justification for him to forcibly eject him who is thus invested with the possession. The remedy is to sue the sheriff or party for the forcible entry.

2. In a suit for a forcible entry, where the defendant pleads not guilty, the issue is upon the defendant's forcible entry—therefore records of other suits, between other parties, with respect to the property or possession are *prima facie* irrelevant. To show a relevancy, the privity or connection between the parties to the records and those before the court should first be suggested or shown.

3. When charges asked for appear to have no connection with the fact in issue, *their application* must be shown by setting out the evidence, otherwise the presumption arises that the court properly refused them for irrelevancy.

4. *Quere?* Whether one ejected in 1841, under process to which he was neither party or privy, can be prevented from regaining his possession by suit commenced within the proper time, by contests between the party evicting him and other persons for the possession.

Writ of Error to the Circuit Court of Mobile.

THIS is a suit for forcible entry, commenced before a justice of the peace, by Horsefield, against Adams and Knapp, and by them removed to the Circuit Court by *certiorari*.

2

At the trial before the justice, witnesses having been ex-
amined, the defendants offered in evidence the record of the
suit Doe on the demise of Walker v. Bebee, Etter, Brown and
Hall, the writ of possession under it, the sheriff's return by
which he put Daniel Chandler in possession, and turned
Horsefield out. Also, the proceedings in the Circuit Court,
under which a second writ of possession was issued from said
court to put Hilliard in possession. These records were of-
fered, not for the purpose of showing title, but to *sever the
identity* between the defendants and Chandler, but were re-
jected by the justice as irrelevant, because the complainant,
Horsefield was not a party or privy to either suit.

The defendants offered in evidence a lease from one Bebee
to Henry Etter, in 1838, to show the possession of said prem-
ises by Bebee at that time. This was rejected as irrelevant,
Horsefield not being a party to the transaction, and the pos-
session of the premises at that time not being in question.

The defendants also offered the record of the suit, Horse-
field v. Chandler, before a justice and the writ of restitution
in that case, under which Horsefield was put in possession, in
December, 1844. This was objected to by the complainant,
and the objection sustained, on the ground the record had no
connection with the cause on trial.

The defendants also offered in evidence, a notice to quit a
part of the premises described in this complaint, addressed to
J. A. Campbell, Daniel Chandler, Reuben Barnes, James Bar-
ry and Robert Ellis, dated July 30th, 1841, signed by Horse-
field, and indicating the penalty of a suit for forcible entry.
This was objected to by the complainant, and the objection
sustained on the ground, that it appeared from the evidence
that the notice and signature were not in the hand-writing of
Horsefield, but were in the writing of one Wilkins, and no
proof was offered that Wilkins was authorized to write or
give said notice for Horsefield, and further, that the notice was
indorsed as being a copy.

The Justice gave the following charges:

1. If the jury believe that the complainant was in the peace-
able and quiet possession of the premises described in the
complaint, and was forcibly turned out of the same, by the
defendants, or by persons acting under them, and that he is

kept out of possession by them, or their agents, the jury should find the defendants guilty. That Horsefield was dispossessed by the sheriff, by virtue of a writ of restitution under a judgment to which Horsefield was not a party, or privy, is no defence.

2. That if the sheriff turned a party out of possession, who was not a party or privy to the judgment on which the writ of possession was issued, under which he acted, it is no justification to parties present demanding of him the possession in a case of forcible entry and detainer against such parties.

The defendants asked the following charges:

3. That if the judgment of Horsefield, being against Chandler, did not authorize him to eject Adams and Knapp, then the act of Adams and Knapp afterwards, did not make them guilty of a forcible entry.

4. That if the jury was satisfied, that when Campbell and Chandler dispossessed Horsefield, in 1841, he did an act which was not authorized by Hilliard or the defendants, then the judgment of Horsefield against Chandler for that act was not binding on the defendants, so as to authorize Horsefield to eject them by his writ of possession.

5. If these defendants were not parties, directly or indirectly to Horsefield's suit, the judgment does not bind them, nor could the writ of restitution eject them—it could eject only Chandler, and those in privity with him.

6. If Horsefield was a joint tenant with, or servant of Bebee, then it was not necessary for notice in the ejectment of Hilliard to be served on Horsefield.

7. If Horsefield unlawfully ejected the defendants, it would not be a forcible entry for the defendants afterwards to eject him in any manner that did not constitute a breach of the peace.

8. That if the sheriff put Horsefield in possession, and turned Hilliard out, at the request of Horsefield, the latter was guilty of a forcible entry if Hilliard was not a party.

9. That if Horsefield was so guilty of a forcible entry and detainer, he has no right to recover in this action.

These several charges were refused, as not pertinent, and irrelevant to the case under examination.

The defendants excepted to the several charges given by the court, and also to the refusals to charge as requested.

After the removal of the cause to the Circuit Court, the defendants applied for and obtained an *alias certiorari* to the justice, to send up an amended transcript of the proceedings before him, so as to show what the evidence was before the jury. This writ issued, and the justice returned that he had sent up a complete record in obedience to the first *certiorari* and could make it no more perfect. No other or further proceedings to amend the record appear in the transcript, except a motion to attach the justice, and to strike his return from the files which the court refused. In this court the counsel for the plaintiff consents that certain records copied into the transcript, shall be considered as returned by the clerk of the Circuit Court of Mobile, in answer to a *certiorari* from this court, to send up an amended record. These are as follows:

1. The record of a suit Doe ex dem G. J. S. Walker v. A. R. Bebee, Henry Etter, D. E. Hall and J. N. Brown. Judgment 27 May, 1841. *Hab. fac. poss.* 22 June, 1841, returned on the 24th July, that on that day it was executed by putting the plaintiff's attorney in possession of that part of the premises occupied by Henry Etter and John Horsefield.

2. The record of a suit before a justice for forcible entry by John Horsefield v. J. A. Campbell and D. Chandler, commenced 10 August, 1841. In this there was a verdict for the plaintiff, but the cause was removed by *certiorari*, issued the 1st September, 1841, and the record shows no disposition of the cause.

3. The record of an ejectment suit, Doe ex dem Hilliard v. Bebee, commenced against him and Henry Etter in October 1838. Judgment against Bebee, at Spring term, 1841. *Hab. fac. poss.* issued 24 June, 1841, returned executed on the 13th August, by putting Daniel Chandler in possession. An *alias Hab. fac. poss.* was issued the 12th June, 1843, and recites the setting aside of the return to the former writ. This alias is returned executed 24th February, 1844, by putting A. Knapp in possession, by the direction of J. F. Adams the plaintiff's attorney.

4. The record of a second suit commenced for a forcible

entry in a justices court on the 2d January, 1844, by Horsefield v. J. A. Campbell and D. Chandler.   Judgment was rendered against Chandler, and the writ of restitution issued 28th December, 1844, under which Horsefield was put by the sheriff in possession, on the 30th and 31st December, 1844.

5. The record of a writ of restitution issued from a justice in a suit for forcible entry, Hilliard v. A. J. Jude, Alex. Carr, and C. Ketchum.   This was executed 31st December, 1844, some time later in the day than the last writ, by putting J. F. Adams and A. Knapp in possession.

In the Circuit Court the assignment of errors opened all the questions arising in the justices court on the existence of the records, and upon the charges given and refused.

The Circuit Court considered the justice as having erred in refusing to give the 5th charge requested by the defendants, (the 7th in the order stated in this report,) reversed the judgment.

This is the matter assigned as error in this court.

J. A. CAMPBELL, for the plaintiff in error, insisted the judgment of the Circuit Court cannot be sustained on the ground assumed, and made the following points to sustain the judgment of the justice:

1. The records certainly were not *prima facie* competent, and nothing is disclosed by the excepting party to show in what way they were relevant.   [Innerarity v. Byrne, 8·Porter, 176.]

2. The charges given are in strict conformity with previous decisions of this court.   [Armstrong v. Betts, 8 Por. 57.]

3. Those refused were *prima facie* irrelevant.   It is the duty of the excepting party to show error, the court will not infer it.   [Knapp v. McBride, 7 Ala. Rep. 29.]   But those charges all refer more or less to the title, and to the fact of a former disturbance of possession, which cannot be inquired into.   [Cunningham v. Green, 3 Ala. Rep. 129; Clark v. Stringfellow, 4 Ib. 353.]

4. Under process in possessory suits the sheriff and parties aiding him, are trespassers, if they evict other than a party or privy.   [Clifton v. Grayson, 2 Stewart, 412; Chiles v. Stephens, 1 Marsh. 333.]

J. F. ADAMS and E. W. PECK, contra, argued—

1. A forcible entry cannot be committed by the sheriff in evicting individuals under process. The eviction must be forcible as well as unlawful. [Botts v. Armstrong, 8 Porter, 62.] If legal process is abused, the court whence it issued will protect all persons. [Hale v. Hilliard, 6 Ala. 44; Howard v. Kennedy, 4 Ib. 592.] And there is no reason why the justice's courts have not the same power. [Wright v. Lyle, 4 Ala. Rep. 112.]

2. The records offered by the defendants establish, that the plaintiff obtained his possession by wrongfully ejecting the defendants by legal process, and the defendants merely regained their possession in the same manner. To deny this right, is to take away that of self protection. The records were also proper evidence to show the time and fact of possession, and under whom the parties held. [1 Phil. Ev. 332.]

3. It is in this view the justice erred in all the charges which took from the jury the right to consider how Horsefield come into possession. And if the court can now look into the record to see that no one was dispossessed in point of fact, on the 30th December, 1844, but that both writs were executed by the attornment of the tenants, this fact would be equally conclusive. [Kirchwall v. Ambler, 7 J. J. M. 626.]

GOLDTHWAITE, J.—1. When our statutes on the subject of forcible entry and detainer are examined, we think there can be but one opinion on the point on which the Circuit Court reversed the judgment of the justice. They were intended to give a summary remedy wherever the possession of real estate is intruded upon forcibly, or where, after a peaceable entry, the possession is detained in that way from the person upon whom the entry was made. The possession at the time of intrusion, is the only matter which is permitted to be the subject of investigation. All questions as to the ultimate title or as to the right of possession, as distinguished from the actual possession are excluded from the jury. [Dig. 250, § 1, 2, 3, 5, 20.] The statutes do not take away the right of a party to protect his possession but the

right of re-entry is expressly abolished by the first section of the act, unless it can be made in a peaceable manner. [Dig. 250, § 1.] After thus abolishing the right of entry *sub-modo*, the statute proceeds to define what shall constitute a forcible entry, and not content with thus protecting the possession, immediately afterwards declares, that whenever the entry is lawful, or peaceable, if afterwards it is held unlawfully, and with force or strong hand, or weapons, or violence, or menaces, &c. &c., it shall be a forcible detainer. [Dig. 251, § 14.] Whether this was intended to enable any one whose possession is intruded on without force, to consider the intruder as a forcible detainer of the possession, after his refusal to permit the party to re-enter peaceably, is a matter which we need not decide at this time, as not involved here; but however this may be, it is evident the chief object of the statute is to maintain the party having the actual possession, against the entry of one whose right of possession, or of re-entry has not been conceded by him. If a party was permitted to re-enter by force, for the reason that he himself had previously been unlawfully ejected, there would be an end to all resort to law, and in such cases the strongest would prevail. If the defendants can assume that the complainant is a trespasser, why should not he, in his turn, assume, or prove, that they or somebody else trespassed on him? And if so, where is the investigation to end? To make this view clear, it is necessary only to look at the records. The plaintiff was turned out of possession in 1841, under a writ of *Hab. fac. poss.* to which he was not a party, and is not shown to be a privy, at the suit of Walker. Whilst he is suing to regain the possession from which he has been expelled, Hilliard, or rather the defendants, were put in possession under a writ to which, as before, the plaintiff is not a party, and is not shown to be a privy. When he was again put in possession, on the 31st December, 1844, by the writ of restitution against Chandler, we are not prepared to say, either that the defendants were, or were not, in law, such privies in estate as made the entry lawful and proper as to them; but we entertain no question that their possession was so disturbed and ended, as not to be lawfully regained by their own forcible act. If

their privity with Chandler was a matter of contest, the want of connection between him and them, could be shown in a suit against the sheriff, for his entry under the writ of Horsefield, or against Horsefield for directing their eviction; or by some other proceeding equivalent to a suit. [Chiles v. Stephens, 1 Marsh. 333; Howard v. Holman, 4 Ala. Rep. 592.] What we have said is sufficient to show, that if Horsefield unlawfully ejected the defendants, this furnished no justification for them to eject him in a forcible manner, although the force used did not extend to a breach of the peace. The reverse of this proposition was charged by the justice of the peace, and the Circuit Court erred in reversing his judgment on this ground.

2. As the ground for reversing the judgment of the justice cannot be sustained, the whole record, so far as covered by the assignments of error in the Circuit Court, is opened, and we must inquire whether the records offered were relevant to the point in issue. This was, that the defendants forcibly entered on the plaintiff on the 31st of December, 1844. To show they did not so enter, the record of the forcible entry suit between Hilliard, Jude, Carr and Ketchum, would have been relevant, if they had proposed to show that the plaintiff was in privity with the defendants to that suit, or any of them, but *prima facie* the record itself was irrelevant, without this connection being suggested. This connection, however, was not pretended, but this, as well as the other records offered for the purpose, as the justice states it, *to sever the identity* between Chandler and the defendants. This is not very clear in itself, unless we intend that the plaintiff had previously attempted to show that Chandler was in some way identified with them. The intendment of such a fact is without any warrant from the record, and if the defendants wished to raise any point upon it, their's was the duty to state the evidence applicable to it. We are unable to see any relevancy in the excluded records, and hence conclude they were properly rejected.

3. The charges refused seem either to be predicated on the records which were rejected, and therefore fall with the point just discussed, or else arise out of other evidence given at the trial. What this other evidence was, we may learn,

so far as we can be instructed by the affidavit in aid of the motion to amend the record, but this motion was finally refused, and therefore constitutes no part of the record, which can avoid the effect of the error already ascertained. The transcript from the justice cannot be amended in the Circuit Court, but must be amended, if at all, by the justice of the peace. [Perryman v. Burgster, 6 Porter, 99.] This being the case, we cannot look to the proceedings on the motion to amend for any purpose, as the case is presented.

4. We are not aware, the expression of an opinion on the respective claims of the parties is called for, at this time, or if expressed, that it would have the effect of an adjudication; but we do not well perceive how the possession of Horsefield, in 1841, when he seems to have been evicted under Watkins' judgment, in the ejectment suit against Bebee, Etter, Hall, and Brown, can be affected without showing he is in privity with the defendants in that suit, or some one of them, if he sues in proper time to regain his possession. The same remark would apply to the ejectment suit of Hilliard against Bebee and Etter, if Horsefield had been evicted under that.

On the whole case, as before us, we can see no error in the proceedings of the justice, and therefore the judgment of reversal of the Circuit Court must be here reversed and the cause remanded, with instructions for proceedings in conformity with this opinion. It will be seen we have omitted all examination of the charges given, and this is for the reason that their correctness is not seriously controverted, but if it was, they seem to be in entire accordance with the principles settled in Botts v. Armstrong, 8 Porter, 57.